UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| INGRID N. CALDWELL, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 4:20-CV-1506 RLW |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) ) |

**MEMORANDUM AND ORDER**

Plaintiff Ingrid N. Caldwell brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the Commissioner's final decision denying her application for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401, et seq. and for supplemental security income (SSI) under Title XVI of the Act, 42 U.S.C. §§ 1381, et seq. For the reasons that follow, the decision of the Commissioner is reversed.

**I.  Procedural History**

Plaintiff filed her application for DIB and SSI on February 6, 2017. (Tr. 556). Plaintiff alleged she had been unable to work since January 9, 2017. (Id.) Plaintiff's application was denied on initial consideration, and she requested a hearing before an Administrative Law Judge ("ALJ"). Plaintiff and counsel appeared for a hearing on November 28, 2018. (Tr. 384-426). Plaintiff testified concerning her disability, daily activities, functional limitations, and past work. Id. The ALJ also received testimony from vocational expert ("VE") Brenda Young. Id. On November 29, 2019, the ALJ issued an unfavorable decision finding Plaintiff not disabled. (Tr. 350-60). Plaintiff filed a request for review of the ALJ's decision with the Appeals Council. On August 27, 2020, the Appeals Council denied Plaintiff's request for review. (Tr. 1-4). Plaintiff has exhausted

her administrative remedies, and the ALJ's decision stands as the final decision of the Commissioner subject to judicial review. See 42 U.S.C. §§ 405(g), 1383(c)(3).

In this action for judicial review, Plaintiff claims the ALJ's decision is not supported by substantial evidence in the record as a whole. Specifically, Plaintiff argues the ALJ's findings regarding Plaintiff's residual functional capacity ("RFC") are not supported by the medical evidence in that the ALJ failed to properly weigh the opinion of Plaintiff's treating physician. Plaintiff requests that the decision of the Commissioner be reversed, and the matter be remanded for further evaluation.

With regard to Plaintiff's testimony, medical records, and work history, the Court accepts the facts as presented in the parties' respective statements of facts and responses. The Court will discuss specific facts relevant to the parties' arguments as needed in the discussion below.

## II. Legal Standard

To be eligible for DIB under the Social Security Act, plaintiff must prove that she is disabled. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001); Baker v. Sec'y of Health & Hum. Servs., 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual will be declared disabled "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process.  See 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity.  If the claimant is working, disability benefits are denied.  Second, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments, meaning that which significantly limits his or her ability to do basic work activities.  If the claimant's impairment is not severe, then he or she is not disabled.  Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1, the claimant is considered disabled, regardless of age, education, and work experience.  20 C.F.R. §§ 416.920(a)(4)(iii), (d).

At the fourth step, if the claimant's impairment is severe but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the RFC to perform his or her past relevant work.  20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(5)(i).  An RFC is "defined as the most a claimant can still do despite his or her physical or mental limitations." Martise v. Astrue, 641 F.3d 909, 923 (8th Cir. 2011); see also  20 C.F.R. § 416.945(a)(1). Ultimately, the claimant is responsible for providing evidence relating to his or her RFC, and the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3).  If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv).

In the fifth step, the Commissioner evaluates various factors to determine whether the claimant is capable of performing any other work in the economy. If the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production shifts to the Commissioner to show the claimant maintains the RFC to perform work that exists in significant numbers in the national economy. See Brock v. Astrue, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work which exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. § 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. Id. In the fifth step, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. Hensley v. Colvin, 829 F.3d 926, 932 (8th Cir. 2016).

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Estes v. Barnhart, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. Johnson v. Apfel, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings." Coleman v. Astrue, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." Id. (internal quotation marks and citations omitted). Under this test, the Court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision." Reece v. Colvin, 834 F.3d 904, 908 (8th Cir. 2016). The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and

substantial evidence." Id. The ALJ will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." KKC ex rel. Stoner v. Colvin, 818 F.3d 364, 370 (8th Cir. 2016).

### III. The ALJ's Decision

In a decision dated November 29, 2019, the ALJ applied the above five-step analysis and found Plaintiff had not engaged in substantial gainful activity since January 9, 2017; Plaintiff has the severe impairments of multiple sclerosis ("MS"), arthritis of the left knee, rotator cuff tear, asthma, and obesity. (Tr. at 353); and Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 353).

As for Plaintiff's RFC, the ALJ found Plaintiff retained the ability to perform light work as defined in 20 C.F.R. § 404.1567(b) with additional functional limitations. The ALJ wrote the following:[1]

> [Plaintiff] is able to stand and/or walk 2 hours at a time for a total of 6 hours in an 8-hour workday, sit 6 hours at a time for a total of 6 hours in an 8-hour workday, and lift/carry up to 10 pounds frequently and 20 pounds occasionally. She is able to frequently reach overhead, and push and/or pull with left upper extremity; otherwise she has no manipulative limitations. She is able to frequently use her bilateral lower extremities to operate foot controls. [Plaintiff] should never climb ropes, ladders or scaffolds but is able to occasionally climb ramps and stairs. She is able to occasionally stoop, kneel, crouch and crawl. She should avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity and pulmonary irritants (such as gases and fumes). [Plaintiff] is able to have occasional

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

exposure to vibration and hazards (such as exposed moving mechanical parts and unprotected heights).

(Tr. 354).

At the fourth step, the ALJ found Plaintiff was able to perform her past relevant work as a claims adjuster and telephone services sales representative. (Tr. 358). At the fifth step, relying on the testimony of the VE and considering Plaintiff's age, education, work experience, and RFC, the ALJ also found there were jobs existing in significant numbers in the national economy which the Plaintiff could perform, including file clerk, customer service complaint clerk, survey worker, office helper, and dining room attendant. (Tr. at 360). At the end of her analysis, the ALJ concluded Plaintiff was not disabled. (Tr. 360).

## IV. Discussion

In her Brief in Support of Complaint, Plaintiff argues the ALJ did not make her RFC determination based on substantial evidence in the record. Plaintiff argues that the ALJ's RFC determination was in error because she did not assign the proper weight to the medical opinions and findings in the record. Plaintiff faults the ALJ for discounting the opinion of Rose Hiner, M.D., Plaintiff's treating physician. Defendant responds that the ALJ properly evaluated the medical opinions and findings under the regulations.

    A.    **RFC Standard and Applicable Law.**

RFC is what a claimant can do despite his or her limitations and includes an assessment of physical abilities and mental impairments. 20 C.F.R. §§ 404.1545, 416.945. The RFC is a function-by-function assessment of an individual's ability to do work-related activities on a regular and continuing basis. SSR 96–8p, 1996 WL 374184, at *1 (July 2, 1996). "[A]lthough medical source opinions are considered in assessing RFC, the final determination of RFC is left to the Commissioner." Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005). It is the ALJ's responsibility

6

to determine the claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians, and the claimant's own descriptions of his or her limitations. Combs v. Berryhill, 878 F.3d 642, 646 (8th Cir. 2017); Pearsall, 274 F.3d at 1217. According to the Eighth Circuit, "Ultimately, the RFC determination is a 'medical question,' that 'must be supported by some medical evidence of [the claimant's] ability to function in the workplace.'" Noerper v. Saul, 964 F.3d 738, 744 (8th Cir. 2020) (quoting Combs, 878 F.3d at 646); see also Steed v. Astrue, 524 F.3d 872, 875 (8th Cir. 2008) (ALJ's RFC assessment must be supported by medical evidence).  Therefore, an ALJ is required to consider at least some supporting evidence from a medical professional. See Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001) (some medical evidence must support the determination of the claimant's RFC).  An ALJ's RFC determination should be upheld if it is supported by substantial evidence in the record.  See Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006).

Plaintiff's claim was filed before March 27, 2017, therefore, the ALJ's evaluation of medical opinions is governed by 20 C.F.R. § 404.1527(c)(2)-(6).[2] Under the relevant regulations and controlling law, "an ALJ must give a treating physician's opinion controlling weight if it is well-supported by medical evidence and not inconsistent with the substantial evidence in the record." Lucus v. Saul, 960 F.3d 1066, 1068 (8th Cir. 2020) (citing 20 C.F.R. § 404.1527(c)(2); Walker v. Comm'r, Soc. Sec. Admin., 911 F.3d 550, 553 (8th Cir. 2018)).  If the ALJ determines the opinion of a treating physician does not warrant controlling weight, "the ALJ must provide 'good reasons' for this decision and must consider: the length of the treatment relationship, frequency of examination, nature and extent of the treatment relationship, record support for the opinion, the opinion's consistency, the extent to which the opinion is connected with the

---

[2] The Social Security Administration has since amended its rules for treating physician opinions, but those changes do not apply here. See 20 C.F.R. § 404.1520c.

7

physician's specialization, and other relevant factors." Id. (citing 20 C.F.R. § 404.1527(c)(2)–(6)). Under the guidelines, the ALJ's decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers . . . the reasons [for the decision]." SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

**B.     The ALJ's Evaluation of Medical Opinion Evidence.**

According to evidence in the record, Dr. Hiner has been Plaintiff's primary care physician since 2012, but the bulk of the medical records from Dr. Hiner are dated after January 9, 2017, the date Plaintiff claims was the onset of her disability. Plaintiff was seen by Dr. Hiner on January 30, 2017. Plaintiff reported that she fell and hit her left side, including her hip, knee, and left arm. Steroid injections did not relieve her pain. Dr. Hiner observed tenderness, decreased range of motion, and spasm in the left shoulder. She added prescription Tramadol to treat chronic left shoulder pain, and Plaintiff was to remain off work due to symptoms.

Plaintiff returned to Dr. Hiner on February 16, 2017. She reported continued pain on the left side with difficulty sleeping due to pain in the left shoulder. On physical examination, Dr. Hiner observed tenderness, decreased range of motion, swelling and pain in the left shoulder. Plaintiff also reported increasing falls secondary to MS. Dr. Hiner noted Plaintiff was taking medications as prescribed. Dr. Hiner diagnosed chronic left shoulder pain and MS. (Tr. 851).

On June 6, 2017, Plaintiff saw Dr. Hiner for insect bites. Dr. Hiner diagnosed, among other things, neurodegenerative gait disorder. (Tr. 1171). Plaintiff reported that she has been fatigued and off balance. (Tr. 1175).

An MRI of the brain on June 26, 2017, revealed new plaque formation, which was again identified in the right and left parietal white matter, increase in plaque in the left posterior temporal

8

parietal region; and some diffusion restriction in the right parietal white matter plaque. (Tr. 1593-94). Imagining of the cervical spine revealed bright signal in the right half of the spinal cord at upper C2-3, plaque in the left ventral lateral aspect of the cord at C3; plaque in the right ventral lateral aspect of the spinal cord at C3-4, plaque continues in the right half of the cord through C4. (Tr. 1594).

On July 12, 2017, Plaintiff returned to Dr. Hiner. She diagnosed, among other things, neurodegenerative gait disorder. (Tr. 1198). Plaintiff reported bilateral knee pain, right worse than left. MRI of the right knee showed a Baker's cyst and fluid on the knee. (Tr. 1203). On physical examination, Dr. Hiner observed the following: swelling and tenderness of the right knee; and decreased range of motion, swelling and tenderness of the left knee. Dr. Hiner diagnosed chronic pain of the right knee, ruptured Baker's cyst, and chronic left shoulder pain. (Tr. 1207).

On July 20, 2017, Dr. Hiner authored a letter requesting that Plaintiff's daughter remain in daycare during normal hours secondary to Plaintiff's MS, knee pain and a shoulder injury, "making it difficult to care for her daughter during the day."[3] (Tr. 1912).

Plaintiff returned to Dr. Hiner on October 31, 2017. She reported low back pain for the past four months. Plaintiff reported that she has frequent falls, including one just two days prior. (Tr. 1256). She reported increased weakness in her legs bilaterally. Plaintiff reported that she was taking three and one-half to four Percocets per day to treat severe pain. (Tr. 1256). On physical examination, Dr. Hiner observed the following: decreased range of motion and tenderness in the lumbar spine; positive straight leg raises (SLR); and decreased strength in the bilateral lower extremities. Dr. Hiner diagnosed Plaintiff with MS; chronic bilateral low back pain with bilateral

---

[3]On March 23, 2017, a treating nurse practitioner at Mercy Clinic Internal Medicine authored a similar letter requesting that Plaintiff's daughter remain in daycare during normal hours secondary to Plaintiff's MS and a shoulder injury, "making it difficult to care for her daughter all day." (Tr. 1911).

9

sciatica; bilateral leg weakness, for which she recommended an MRI; urinary frequency, for which Plaintiff is high risk for infection given MS; chronic pain of the right knee; and chronic left shoulder pain. Dr. Hiner noted Plaintiff continued to take Gilenya. (Tr. 1261-62).

Dr. Hiner saw Plaintiff again on December 20, 2017. Plaintiff reported left hip and left knee pain. Plaintiff had recently fallen and bruised her right side. She stumbled on the left side and felt like she twisted her ankle and knee. Plaintiff's left side was weaker, and her back pain was worse, left worse than right. Plaintiff had a total of four falls in the preceding week. (Tr. 1284). On physical examination, Dr. Hiner observed the following: decreased range of motion, decreased strength, tenderness and swelling of the left hip; decreased range of motion, swelling and tenderness of the left knee; and decreased range of motion, swelling and tenderness of the left ankle. (Tr. 1288). Dr. Hiner refilled Percocet for severe pain, as well as Tramadol and Celebrex. (Tr. 1289).

Plaintiff returned to Dr. Hiner on January 5, 2018. She reported knee pain, weakness, shoulder pain and recurrent falls with injuries. (Tr. 1312). On physical examination, Dr. Hiner observed the following: decreased range of motion and tenderness of the left shoulder; decreased range of motion and tenderness of the right knee; decreased range of motion and tenderness of the left knee; and decreased range of motion and tenderness of the lumbar spine. She diagnosed MS, chronic left shoulder pain and chronic pain of the bilateral knees. (Tr. 1317).

On February 14, 2018, Dr. Hiner authored another letter requesting that Plaintiff's daughter remain in daycare during normal hours secondary to Plaintiff's MS, knee pain and injury, frequent falls, back pain, and a shoulder injury, "making it difficult to care for her daughter during the day." (Tr. 1913).

Plaintiff returned to Dr. Hiner on May 3, 2018. Plaintiff reported pain and falling down. She was taking four Percocets per day help with the pain. Plaintiff reported new, stabbing pains

10

from MS, numbness of the fingertips, and the feeling that her knees will give out. (Tr. 1337). On physical examination, Dr. Hiner observed the following: musculoskeletal tenderness; decreased range of motion, tenderness and spasm of the left shoulder; decreased range of motion, swelling and tenderness of the right knee; decreased range of motion, swelling and tenderness of the left knee; and sensory deficit (decreased strength), abnormal gait and numbness. (Tr. 1342). Dr. Hiner diagnosed MS, multifactorial gait disorder, neurogenic bladder, chronic pain syndrome, frequent falls, posttraumatic osteoarthritis of the bilateral knees, posttraumatic osteoarthritis of the left shoulder, migraines, and neuropathic pain. (Tr. 1332). Dr. Hiner discontinued Percocet and prescribed Nucynta. She refilled Flexeril, Celebrex, Tramadol and Fioricet for migraines. (Tr. 1343). Dr. Hiner noted Plaintiff continued to take Gilenya. (Tr. 1346).

On July 2, 2018, Plaintiff reported to Dr. Hiner that she fell four times in one day. She also complained of a mass on the top of her foot. (Tr. 1364). An x-ray was ordered due to her falls. Reviews of Plaintiff's musculoskeletal and neurological systems were positive for arthralgias and weakness and numbness. (Tr. 1369).

On August 22, 2018, Dr. Hiner authored a letter in which she stated that she believes Plaintiff has a medical need for home health services and personal care services based on her diagnosis of MS, frequent falls, multiple joint pains, weakness, and numbness. Dr. Hiner indicated that Plaintiff requires these services up to five days per weekly, up to eight hours per visit. In her letter she wrote, "[Plaintiff] is unable to do her [activities of daily living] without injury due to her multiple sclerosis diagnosis, which results in falls and injuries." (Tr. 1909-10).

On September 4, 2018, Plaintiff reported to Dr. Hiner that she had right low back pain and spasms radiating down the legs. She was taking Flexeril and Baclofen, as well as a number of other medications. (Tr. 1390). On physical examination, Dr. Hiner observed decreased range of motion and tenderness of the lumbar spine and decreased strength. She diagnosed chronic right-

11

sided low back pain with bilateral sciatica. She confirmed Plaintiff remains compliant with the prescribed medication regimen. (Tr. 1395).

Plaintiff returned to Dr. Hiner on September 27, 2018. She reported that she continued to have multiple joint pains in her knees and back. (Tr. 1418). On physical examination, Dr. Hiner observed musculoskeletal tenderness. The doctor refilled Percocet, among other medications, and diagnosed Plaintiff with MS, anxiety, chronic pain syndrome, and multiple joint pain. (Tr. 1424).

Imagining was taken on October 23, 2018. An MRI of Plaintiff's cervical spine revealed extensive bilateral areas of T2 signal hyperintensity within the cervical spinal cord from C2-5. May 2018. (Tr. 1524). An MRI of Plaintiff's thoracic spine revealed scattered foci of T2 hyperintensity throughout the thoracic spinal cord consistent with Plaintiff's known diagnosis of MS. (Tr. 1530). An MRI of Plaintiff's lumbar spine revealed mild lumbar spondylosis at L4-5 and L5-S1. (Tr. 1538).

Plaintiff was seen by Dr. Hiner again on October 29, 2018. Plaintiff reported severe shoulder pain, with weakness and decreased range of motion, and back pain. (Tr. 1490). On physical examination, Dr. Hiner observed musculoskeletal tenderness; decreased range of motion, tenderness and spasm of the left shoulder; decreased range of motion and tenderness of the right knee; and decreased range of motion and tenderness of the left knee. She diagnosed chronic left shoulder pain, chronic pain in the bilateral knees, chronical bilateral low back pain without sciatica, urinary frequency, MS, and chronic pain of the right knee. (Tr. 1496-97).

On November 30, 2018, Dr. Hiner completed a medical source statement. (Tr. 1915-16). Dr. Hiner wrote that she has been treating Plaintiff since October 15, 2012. Dr. Hiner indicated Plaintiff's diagnoses were the following: chronic left shoulder pain, chronic knee pain, chronic low back pain, MS, weakness, and frequent falls. Dr. Hiner opined Plaintiff's prognosis was

guarded, and her symptoms included fatigue, weakness, unstable walking, increased muscle tension/spasm, impaired sleep, pain, bladder problems and balance problems. (Tr. 1915).

Dr. Hiner opined that Plaintiff requires a job that permits shifting positions at will from sitting, standing, or walking.  She also opined that Plaintiff could stand less than two hours and sit less than six hours in an eight-hour workday.  Plaintiff needs a five-to-ten-minute break every thirty minutes. Plaintiff must use an assistive device when standing/walking. Plaintiff can occasionally lift/carry less than ten pounds. (Tr. 1915).  Dr. Hiner checked the box and indicated Plaintiff can never reach in all directions, but that she can occasionally handle objects. Plaintiff has a marked limitation in her ability to handle work stress. She has good and bad days, but more bad days than good.  Plaintiff would be expected to be off task more than 20% of an eight- hour workday. Plaintiff would be expected to miss more than three days of work per month secondary to her symptoms, which include weakness, falls, pain, difficulty walking, urinary issues, and severe MS. (Tr. 1916).

Plaintiff was seen by Dr. Hiner following her assessment.  On May 3, 2019, Plaintiff reported pain and swelling in the right-hand status-post infusion. She has been unable to use her right hand since the infusion.  It was noted that Plaintiff cannot use her cane secondary to the right-hand pain, and that Plaintiff had difficulty bending her hand. (Tr. 164).  On physical examination, Dr. Hiner observed edema in the right hand and arm with ecchymosis, tenderness and swelling. (Tr. 169).

Plaintiff returned to Dr. Hiner on September 13, 2019. Plaintiff reported pain in the back, left knee, left thigh and leg, and difficulty gripping at times. (Tr. 189).  On physical examination, Dr. Hiner observed musculoskeletal swelling and tenderness. Dr. Hiner diagnosed chronic pain of right knee, multiple joint pain, chronic left shoulder pain, MS, and chronic pain. She confirmed that Plaintiff is compliant with prescribed medication regimen. (Tr. 195-96).

Dr. Hiner saw Plaintiff again on October 15, 2019. Plaintiff reported severe rib pain after she fell on the trash can. Imagining confirmed rib fractures. Plaintiff also reported knee pain and weakness. Plaintiff expressed that she was unable to exercise due to pain. She reported 20 falls since her last visit on September 13, 2019. She also reported right shoulder pain with no improvement. (Tr. 218). Dr. Hiner confirmed that Plaintiff was compliant with treatment, and that she has multiple falls due to weakness as a result of MS. Dr. Hiner indicated in her treatment notes that Plaintiff qualifies for home health and is "[u]nable to work due to MS, pains, injuries, falls, weakness." (Tr. 225).

In her decision, the ALJ found Dr. Hiner opinion regarding Plaintiff's physical impairments not to be persuasive. The ALJ wrote the following:

> [Plaintiff]'s own medical source, Rose Hiner, M.D., issued an opinion in this claim, but it is afforded little weight. Dr. Hiner found [Plaintiff] cannot reach in any direction, which is certainly inconsistent with her own treatment notes. Further, Dr. Hiner has recorded medication noncompliance and medications prescribed not typical for relapsing [MS] (which often remits on its own). Also, it appears Dr. Hiner is a primary care physician and not a specialist (neurologist) whose opinion should be given more weights than any other doctor, especially with regard to the claimant MS diagnosis and symptoms. Finally, Dr Hiner's opinion is quite inconsistent with that of the medical expert and state agency physician, both of whom had access to the entirety of the medical record of the claimant (at the time their respective opinions were issued).

(Tr. 22).

Under the Social Security Administration regulations that are applicable in this case, special weight is given to the opinions of treating physicians. Walker, 911 F.3d at 553. Opinions by treating physicians receive controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." Johnson, 628 F.3d at 994 (8th Cir. 2011); see 20 C.F.R. § 404.1527(c)(2). "By contrast, '[t]he opinion of a consulting physician who examines a claimant once or not at all

14

does not generally constitute substantial evidence.'" Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000) (alteration in original) (quoting Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir. 1998)).

At the outset, the ALJ found Dr. Hiner's assessment that Plaintiff "cannot reach in any direction" to be "certainly inconsistent with [the doctor's] own treatment notes." (Tr. 22). In her decision, the ALJ does not explain how Dr. Hiner's opinion regarding Plaintiff's ability to reach overhead was inconsistent with her treatment notes. First, contrary to the ALJ's assertion, Dr. Hiner did not find Plaintiff could not reach in <u>any</u> direction. On the form that she completed, Dr. Hiner was asked to indicate how often Plaintiff could "reach[ ] in <u>all</u> directions," and she responded "never." (Tr. 1916) (emphasis added). Second, the Court has reviewed the record, and there is evidence to support Dr. Hiner's conclusion that Plaintiff could not reach in all directions, because Plaintiff had a left rotator cuff tear, which the ALJ herself determined was severe. As detailed above, Dr. Hiner documented signs to support her opinion, namely Plaintiff had reduced range of motion, tenderness/pain, and swelling or spasms of the left shoulder. (Tr. 851, 846, 1912, 1207, 1317, 1342, 1496). The ALJ's finding that Dr. Hiner's opinion regarding Plaintiff's ability to reach was inconsistent with the doctor's treatment notes is not supported by the evidence in the record.

As for the ALJ's contention that Dr. Hiner recorded medication noncompliance, in her decision, the ALJ failed to cite any example of medication noncompliance in the administrative record. The Court has reviewed the record, and there are a number of instances where it is documented that Plaintiff was compliant with her medications. (Tr. 196, 740, 1150, 1395). Furthermore, Plaintiff presented for the Ocrevus infusion to treat MS, and on November 16, 2016, Plaintiff's treating neurologist confirmed that Plaintiff was taking Gilenya "faithfully." (Tr. 164, 1818). The Court did find one instance in the record when Plaintiff was not compliant with her medication. In July 2016, Plaintiff had an acute attack of MS because she was off Gilenya for five

15

days due to an insurance issue. (Tr. 740). This one instance of noncompliance occurred more than two years prior to the hearing date. In fact, it predates the period of disability. Moreover, it appears to have been on account of an issue beyond Plaintiff's control. The ALJ's contention that Dr. Hiner recorded medication noncompliance is not supported by the record.

    The ALJ also discredited Dr. Hiner's opinion because the "medications prescribed [were] not typical for relapsing [MS] (which often remits on its own)." (Tr. 22). She cites to no opinion evidence or outside authority in support of this conclusion. Plaintiff was prescribed Gilenya and Ocrevus for the treatment of her MS. As Plaintiff points out in her Brief in Support of Complaint, both Gilenya and Ocrevus have been approved for the treatment of MS. See https://www.accessdata.fda.gov/drugsatfda_docs/label/2018/022527s024lbl.pdf (last visited Mar. 14, 2022; https://www.fda.gov/news-events/press-announcements/fda-approves-new-drug-treat-multiple-sclerosis (last visited Mar. 14, 2022). In addition, the ALJ's statement that relapsing MS often remits on its own is also inaccurate and not supported by medical opinion or an outside authority.[4]

---

[4]Relapsing and remitting MS is the most common disease course for MS.

> [It] is characterized by clearly defined attacks of new or increasing neurologic symptoms. These attacks – also called relapses or exacerbations – are followed by periods of partial or complete recovery (remissions). During remissions, all symptoms may disappear, or some symptoms may continue and become permanent. However, there is no apparent progression of the disease during the periods of remission. RRMS can be further characterized as either active (with relapses and/or evidence of new MRI activity over a specified period of time) or not active, as well as worsening (a confirmed increase in disability following a relapse) or not worsening. … Following a relapse, the new symptoms may disappear without causing any increase in level of disability, or the new symptoms may partially disappear, resulting in an increase in disability. New lesions on MRI … often occur as part of a relapse. However, new MRI lesions indicating MS activity may also occur without symptoms of which the person is aware.

https://www.nationalmssociety.org/What-is-MS/Types-of-MS (last visited Mar. 14, 2022).

16

The ALJ also discredited Dr. Hiner's opinion because she is a primary care physician and not a neurologist, "whose opinion should be given more weights than any other doctor, especially with regard to the claimant MS diagnosis and symptoms." (Tr. 357).  At the same time, the ALJ gave "some weight" to Joann Mace, M.D., a non-examining state-agency physician, and "partial weight" to Arnold Ostrow, M.D., a non-examining medical expert.  (Tr. 357).  "In general, the agency is to place more weight on the opinions of specialists over generalists where opinions conflict and evidence does not otherwise provide reasons for rejecting the specialist's opinion." Noerper, 964 F.3d at 746 (citing 20 C.F.R. § 404.1527(c)(5)).  Here, however, there was no medical opinion in the record from a doctor specializing in the treatment of MS, such as a neurologist.  Dr. Mace's specialty is physical medicine, (Tr. 435), and Dr. Ostrow is a pulmonologist. (Tr. 1562-63).

It was also error for the ALJ to have discounted Dr. Hiner's opinion based on the fact that it was inconsistent with the opinions of the two non-examining medical sources.  "'The opinion of a consulting physician who examines a claimant once or not at all does not generally constitute substantial evidence.'" Singh, 222 F.3d at 452 (quoting Kelley, 133 F.3d at 589).  In addition to being from a non-examining source, which is entitled to less deference, 20 C.F.R. § 404.1527(c), Dr. Mace's opinion was stale.  Dr. Mace's opinion is dated June 5, 2017, and the most recent medical evidence she reviewed was dated January 11, 2017, almost three years prior to the ALJ's decision.  (Tr. 434-35).  In that three-year period, there is evidence in the record that Plaintiff's condition had worsened.  There was imagining showing more plaque formations and lesions.  (Tr. 1593, 1594, 1530, 1630).  There were a number of observations in Dr. Hiner's treatment notes, as well as those of Drs. Kos and Green – both of whom are neurologists – of falls, instability, weakness in her legs, numbness, decreased range of motion, a slow antalgic gait, left foot drop, and neurogenic bladder. (Tr. 1150, 1154, 1163-65, 1198, 1261-62, 1317, 1342-43, 1395, 1424,

17

1496, 1585, 1592-94, 1628-30).  In October 2019, Plaintiff began Ocrevus infusions, a more aggressive treatment for MS.  (Tr. 1818). And in August 2018, Plaintiff began receiving home services through Anointing Hands Homecare to her assist her with personal care and daily activities.  Dr. Hiner referred Plaintiff to home healthcare services due to her balance and mobility issues.  (Tr. 302-46, 1909-10).  Dr. Mace did not have access to any of this information when she formed her early opinion.

As for Dr. Ostrow, also a non-examining medical source, the ALJ afforded his opinion "partial weight" because it was consistent with "the stability of the [Plaintiff]'s conditions during the entire period", despite the fact that she recognized that the doctor "did not review the file in immense detail." (Tr. 357).  Setting aside the fact that the ALJ credited a doctor who did not review the medical records thoroughly, describing Plaintiff's condition as stable is a mischaracterization of the medical evidence.  Plaintiff's medical records can best be described as mixed, which is not unusual with relapsing and remitting MS.  Plaintiff's complaints of pain, weakness, and numbness varied throughout the record, but overall, there was a downward trend. There was imaging showing her condition was progressing, and that she was receiving more aggressive drug treatments for MS.  (Tr. 1593, 1594, 1530, 1630, 1818).

In sum, the Court finds the ALJ failed to give "good reason" for discounting the opinion of Dr. Hiner, a treating medical source. <u>Anderson v. Astrue</u>, 696 F.3d 790, 793 (8th Cir. 2012). Dr. Hiner's opinion was supported by objective medical and was not inconsistent with the other substantial evidence in the record.  Moreover, the reasons the ALJ listed for discounting Dr. Hiner's opinion, such as non-compliance with medications, were not supported by the record.  In addition, the Court finds it was error for the ALJ to have given more weight to the two non-examining medical sources, neither of who were specialists in the area of MS.  Furthermore, Dr. Mace's opinion was based on older medical records and was not current, and the ALJ

acknowledged that Dr. Ostrow had not reviewed the medical records carefully. (Tr. 357). After reviewing the record as a whole, the Court finds the ALJ's decision is not supported by substantial evidence as a whole. There is no reliable evidence providing a basis for the ALJ's RFC determination. Noerper, 964 F.3d at 746.

### V. Conclusion

The Court's task "is to determine whether the ALJ's decision 'complies with the relevant legal standards and is supported by substantial evidence in the record as a whole.'" Halverson v. Astrue, 600 F.3d 922, 929 (8th Cir. 2010) (quoting Ford v. Astrue, 518 F.3d 979, 981 (8th Cir. 2008)). The Court finds that it does not in this case. For the reasons set forth above, the Court finds the ALJ improperly evaluated under the applicable regulations the persuasiveness of the medical opinions in the record. Therefore, the Court remands this matter to the Commissioner for further proceedings consistent with this Memorandum and Order.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **REVERSED** and **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum and Order.

A separate judgment will accompany this Memorandum and Order.

_____
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

Dated this  17th  day of March, 2022.